Affirmed by unpublished opinion. Judge DIAZ wrote the opinion, in which Judge AGEE joined. Judge DAVIS wrote a separate opinion concurring in the judgment.
Unpublished opinions are not binding precedent in this circuit.
DIAZ, Circuit Judge:
Jeffery S. Guitón appeals the district court’s order affirming the Commissioner of Social Security’s termination of his disability insurance benefits. Guitón contends that the decision to terminate his benefits is not supported by substantial evidence, and that the Administrative Law Judge (“ALJ”) erred in crediting testimony by a Vocational Expert (“VE”) regarding the number of existing jobs in the economy that Guitón could perform. We agree with the district court that substantial evidence supports the Commissioner’s termination of Guiton’s benefits and find no error in the ALJ’s reliance on the VE’s testimony. Accordingly, we affirm.
I.
Guitón, a North Carolina resident, first applied for benefits on July 31, 2000, after a doctor diagnosed him with a malignant brain tumor. Finding that Guitón was disabled within the meaning of the Social Security Act, the Commissioner awarded benefits. In October 2003, following a continuing disability review, the Commissioner found that Guiton’s condition was “no longer severe enough to be considered disabling,” and terminated Guiton’s benefits. Tr. 55.[1]
Guitón appealed the termination of his benefits first to a state agency hearing officer, and then to an ALJ. The ALJ held a hearing and affirmed the Commissioner’s determination. After the Appeals Council denied review, Guitón sought review of the ALJ’s decision in the U.S. District Court *139 for the Middle District of North Carolina. Pursuant to a consent order, the district court reversed the termination of Guiton’s benefits and remanded to the Commissioner. The ALJ held a second hearing, and again found that Guitón was no longer disabled within the meaning of the Social Security Act.
The ALJ adhered to the eight-step analytical framework that governs administrative reevaluation of Social Security disability awards.[2] See 20 C.F.R. § 404.1594(f). As relevant here, the ALJ assessed whether Guitón had experienced medical improvement related to his ability to work; whether he continued to suffer from an impairment sufficiently severe to be considered disabling; and if not, whether he retained the residual functional capacity (“RFC”) to perform work that exists in significant numbers in the national economy. See id.
The ALJ found that Guitón had indeed experienced medical improvement related to his ability to work. Although Guitón had not worked during the period of disability, he had undergone surgery to remove his brain tumor and had not suffered a seizure since 2000. The ALJ found that Guitón continued to suffer from several medically determinable impairments (including a seizure disorder, lumbar disc disease, low intellect, and a memory disorder), but that these impairments were not severe enough to be considered disabling under the applicable federal regulations. Specifically, the ALJ rejected Guiton’s claim that his condition qualified as mental retardation under Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C, because he failed to establish (a) an onset of impairment before age 22, as the listing requires, and (b) the requisite deficits in adaptive functioning.
With respect to the onset of Guiton’s impairment, the ALJ concluded that Gui-ton’s brain tumor and related surgeries (which occurred after age 22) had negatively affected his IQ. The ALJ credited the written submission of John Bevis, a licensed psychological associate,[3] who opined that Guiton’s pre-tumor intellectual abilities had likely been in the “borderline” range, which, the ALJ noted, is “outside the range for mental retardation and [Listing] 12.05C.” Tr. 19. The ALJ found that the record evidence was consistent with this evaluation, specifically relying on the absence of any notation in Guiton’s school records that he was mentally retarded, and pointing out that the low marks Guitón received in school tended to coincide with extended absences and poor effort.
The ALJ also found that Guitón had failed to demonstrate the requisite deficits in adaptive functioning. Questioning Gui-ton’s claim that he is illiterate, the ALJ noted that Guitón often received “satisfactory” and “commendable” marks in school for reading, and that one report card indicated he was able to read at “level 8.” Tr. 20. Additionally, the ALJ found that Gui-tón “washed his own clothes and dishes, cooked, vacuumed, helped his father and mowed the lawn with a riding mower.” Tr. 20. The ALJ noted that Guitón lived alone at the time of the hearing, and found *140 that he was able to “perform[ ] routine daily activities without difficulty.” Tr. 20.
Concluding that Guitón had not met the requirements of a disability listing, the ALJ proceeded to the final two steps of the analysis. First, the ALJ found that Guitón retained the RFC to perform light work. The ALJ discounted the opinions of several treating physicians that Guiton’s condition would prevent him from sustaining full-time employment. Instead, the ALJ credited the statements of nonexam-ining state agency medical consultants who opined that Guitón could perform light work. The ALJ explained that this conclusion was more consistent with the evaluations of other physicians who had examined Guitón, as well as with other evidence in the record.
Finally, the ALJ concluded that, given Guiton’s age, education, work experience, and RFC, he was able to perform work that exists in significant numbers in the economy. The ALJ credited the testimony of a state VE[4] who testified that Guitón was able to perform the requirements of three occupations identified in the Dictionary of Occupational Titles (“DOT”).[5] To conclude that each of these occupations exists in significant numbers in both the North Carolina and national economies, the VE relied on the Occupational Employment Quarterly (“OEQ”), a commercial publication that employs government data to provide statistics regarding the number of available jobs by census-coded occupational category.
Having proceeded through the eight-step analysis, the ALJ concluded that Gui-tón was no longer disabled within the meaning of the Social Security Act, and was therefore not entitled to benefits.
In response, Guitón filed this action in the district court, seeking review of the Commissioner’s termination of his benefits. A magistrate judge found that the decision was supported by substantial evidence and recommended affirming the Commissioner’s determination. The district court adopted the magistrate judge’s opinion and granted judgment on the pleadings to the Commissioner. Guitón appeals.
II.
This court is authorized to review the Social Security Commissioner’s termination of benefits under 42 U.S.C. § 405(g). In doing so, we “must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.” Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.2012) (alteration in original) (internal quotation marks omitted). “Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005) (internal quotation marks omitted). When reviewing for substantial evidence, we will not reweigh conflicting evidence or make credibility determinations. Hancock, 667 F.3d at 472. Rather, “[w]here conflicting evi- *141 denee allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].” Id. (alteration in original) (internal quotation marks omitted).
III.
On appeal, Guitón challenges the Commissioner’s termination of his benefits in three respects. Guitón argues: (1) that the ALJ erred in finding that he failed to satisfy the requirements of Listing 12.05C, because the ALJ wrongly concluded that the onset of his disability occurred after age 22 and improperly determined that he had not demonstrated deficits in adaptive functioning; (2) that, by substituting his evaluation of the evidence and the opinion of nonexamining state agency medical consultants for the opinions of treating physicians, the ALJ erred in finding that Guitón retained the RFC to perform light work; and (8) that the ALJ erred in crediting the VE’s job numbers because they were based on a flawed statistical methodology.
A.
We have considered Guiton’s first two arguments and, for the reasons stated by the magistrate judge and adopted by the district court, find them to be without merit. See Guiton v. Astrue, No. 1:08CV822, 2012 WL 1267856 (M.D.N.C. Apr. 16, 2012). As the magistrate judge explained, the ALJ thoroughly analyzed the testimony and available evidence, and reasonably concluded that Guitón (1) failed to meet the requirements of Listing 12.05C; and (2) retained the RFC to perform light work. In challenging these findings, Gui-tón essentially asks us to “reweigh conflicting evidence, make credibility determinations, [and] substitute our judgment for that of the [ ALJ].” Hancock, 667 F.3d at 472 (alteration in original) (internal quotation marks omitted). This we are not authorized to do. We instead hold that the ALJ’s findings with respect to these issues are supported by substantial evidence.
B.
Guiton’s third argument requires further discussion. At the last of the eight steps, the Commissioner bears the burden of demonstrating that work the claimant can perform exists in significant numbers in the national economy. See 20 C.F.R. § 404.1594(f); id. § 404.1560(c)(2). Guitón submits that the ALJ erred in concluding that the Commissioner satisfied this burden, arguing that the ALJ impermissibly credited testimony by the VE regarding job statistics that were insufficiently specific.
During the administrative hearing, the VE testified that Guitón is able to perform at least three occupations. She identified these occupations by DOT code: bench assembler (DOT 706.684-022); assembler arranger (DOT 739.687-010); and agricultural sorter (DOT 529.687-186). The VE then reported the number of existing jobs in the North Carolina and national economies for each of these occupations, gleaning the numbers from the OEQ. As Guitón points out, however, the OEQ reports job numbers by census code, not by DOT code. Census codes are broader designations than DOT codes, and a single census code may comprise numerous DOT-coded occupations.[6] Guitón therefore argues that the job numbers the VE reported from the OEQ overstate the actual number of jobs in the economy available to him, because they likely include many jobs associated with DOT-coded occupations he is unable to perform. Guitón contends that without *142 some reliable methodology for determining the number of jobs corresponding to the specific DOT-coded occupations the VE identified, it was error for the ALJ to credit the VE’s testimony.
We have not previously addressed the issue of a VE’s reliance on job numbers from the OEQ, and it appears that only one other circuit has done so directly.[7] In Liskowitz v. Astrue, 559 F.3d 736 (7th Cir.2009), the Seventh Circuit considered a similar argument regarding the specificity of OEQ job numbers. Noting that OEQ job numbers include both full-time and part-time positions — and contending that only full-time positions suffice to carry the Commissioner’s burden — the claimant in that case argued that the ALJ should not have credited the job numbers a VE reported because the VE had not further identified the percentage of the jobs that were full-time. Id. at 743-44.
The court rejected this challenge. Acknowledging that the OEQ is a “source on which VEs customarily rely,” id. at 744, the court determined that requiring more specific numbers would lead to “significant practical problems,” id. at 745. The court explained that because “no government data source contains” the full-time-only data that the claimant was requesting, insisting that a VE produce such data would “impose impossible burdens on the VE.” Id. at 745. A VE, after all, is “not ... a census taker or statistician.” Id. at 743. The court thus found no error in the ALJ’s reliance on the VE’s testimony.
Similar considerations guide us here. As the ALJ explained, the DOT-specific job numbers Guitón would have the VE provide simply do not exist: “There apparently is no data, updated on a regular basis, available through either a public or private sourcet ], that reports numbers of jobs by DOT code number.” Tr. 34. Gui-tón does not dispute this observation. Thus, if we required a VE to produce job statistics specific to the DOT-coded occupations a claimant can perform, it is unlikely that the Commissioner would ever succeed in satisfying her burden. This cannot be the result the regulations intend. Indeed, that the data Guitón requests does not exist “is a sign that [Guitón] expects too much,” and like the Seventh Circuit, we decline to “impose impossible burdens on the VE.” See Liskowitz, 559 F.3d at 745.
In this case, the VE cited the existence of 26,330 jobs in North Carolina and 825,-000 jobs in the United States that Guitón could perform. Tr. 624. Even assuming these numbers were overinclusive, far smaller figures would still suffice to satisfy the Commissioner’s burden. See Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir.1979) (holding that 110 jobs in the claimant’s state was a significant number). We hold that the job numbers the VE provided, although perhaps somewhat im *143 precise, were sufficiently reliable to support the ALJ’s conclusion.
IV.
For the reasons stated above, we affirm the decision of the district court.

AFFIRMED.

. '‘Tr.” refers to the administrative record transcript. -

. This eight-step analysis essentially incorporates the more familiar five-step analysis governing the initial determination of whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4).

. In North Carolina, a licensed psychological associate is "[a]n individual to whom a license has been issued pursuant to [the North Carolina Psychology Practice Act] ... and whose license permits him or her to engage in the practice of psychology.” N.C. Gen.Stat. § 90-270.2(7). Licensure requires either a master's degree or a specialist degree in psychology. Id. § 90-270.11(b).

. VEs are "persons who have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs.” Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir.1980). VEs routinely "assist the ALJ in determining whether there is work available in the national economy which [a] particular claimant can perform.” Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989).

. The DOT is a reference published by the U.S. Department of Labor that lists and describes various jobs. Its use in the disability review process is authorized by regulation. See 20 C.F.R. § 404.1566(d).

. For example, Guitón points out that the DOT code for bench assembler is one of 1,687 DOT codes included within a single census code.

. In Brault v. Social Security Administration Commissioner, 683 F.3d 443 (2d Cir.2012), the Second Circuit described, in a footnote, a similar argument to the one raised here, made by the claimant in that case before an ALJ. Id. at 443, 447 n. 4 (per curiam). The claimant had disputed the reliability of job numbers that a VE derived from a newer version of the OEQ on the basis that it reported job numbers by standard occupational classification ("SOC”) code rather than DOT code. SOC codes, like the census codes involved here, may each comprise numerous DOT codes. Id. The court acknowledged that this "many-to-one mapping” problem might cause a VE’s job estimates to “deviate significantly from the actual number of existing positions.” Id. On appeal, however, the claimant argued only that the ALJ had not provided him a sufficient opportunity-to challenge the VE’s testimony, and that the ALJ had not adequately explained its reasoning. Rejecting these arguments, the court left the merits of the ALJ’s reliance on the VE’s testimony "for another day and a closer case." Id. at 450.