*West v. SEC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of February, two thousand sixteen.

PRESENT:
> GUIDO CALABRESI,
> GERARD E. LYNCH,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

BLAIR ALEXANDER WEST,
> *Petitioner*,

v.                                                                No. 15-621

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
> *Respondent*.

_____

| | |
|---|---|
| FOR PETITIONER: | STANFORD R. SOLOMON, The Solomon Law Group, P.A., Tampa, FL. |
| FOR RESPONDENT: | THEODORE J. WEIMAN (Anne K. Small, Michael A. Conley, Jacob H. Stillman, Jeffrey A. Berger, *on the brief*), Securities and Exchange Commission, Washington, D.C. |

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED** and the order of the Securities and Exchange Commission is **AFFIRMED.**

Petitioner Blair Alexander West seeks review of an order of the Securities and Exchange Commission ("SEC") affirming disciplinary action taken against West by the Financial Industry Regulatory Authority ("FINRA") for misusing client funds in violation of NASD Conduct Rule 2110.[1]  FINRA sanctioned West by permanently barring him from associating with any FINRA member firm.   We assume the parties' familiarity with the underlying facts, and the procedural history of the case.

West makes three main arguments in this petition, all of which lack merit.   First, he argues that the SEC order affirming FINRA's sanctions was not supported by substantial evidence.   Second, he contends that the sanction imposed was excessive.   Finally, he argues the SEC erred by failing to hold oral argument.

(1) "[W]e will affirm the SEC's findings of fact if supported by substantial evidence."   VanCook v. SEC, 653 F.3d 130, 137 (2d Cir. 2011).   "Substantial evidence" is "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).   Under this "very deferential standard of

---

[1] NASD Conduct Rule 2110 requires members to "observe high standards of commercial honor and just and equitable principles of trade."   After FINRA initiated this action, FINRA renamed NASD Rule 2110 FINRA Rule 2010 without substantive change.   Order Approving FINRA's Adoption of Certain FINRA Rules in the Consolidated Rulebook, 73 Fed. Reg. 57,174 (Oct. 1, 2008).   We apply the rule in effect at the time of the misconduct.

review," "once [the agency] finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Social Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and emphasis omitted).

West does not dispute that he used client funds placed with him as a deposit pending closure of a purchase lease-back deal to pay his own personal and business expenses. Rather, West contends that an agreement with his client, AmeriChip International, Inc. ("ACII"), permitted him to use the funds placed with him for any purpose. Upon review of the record, we conclude that the SEC properly found that "there was no misunderstanding over the customer's intended use of the funds," J.A. 1008, and that West misused the funds "[n]otwithstanding the clear limitations on the use of the [d]eposit until the transaction closed." J.A. 1003. The contract governing the deposit, of which West was aware, specified that the deposit would be "held until closing" and returned to ACII "promptly" if the transaction did not close. Id. In December 2008, ACII transferred the funds to an account labeled "Crusader Securities LLC Escrow Account,"[2] evidencing the parties' understanding that the funds would, in fact, be held in escrow. Drew Mouton, a member of ACII's board, testified that he assumed the funds would be kept in an escrow account. Furthermore, West's own conduct at the time indicates that he did not believe he had the right to spend the deposit on personal expenses. Despite spending the deposit almost immediately after it was transferred to him, West repeatedly lied to Mouton about when the funds would be returned and never disclosed to Mouton that he had spent the

[2] West is the sole principal of Crusader Securities LLC, a former FINRA member firm.

3

deposit on personal and business expenses. West did not return the deposit until April 29, 2009, more than two months after Mouton had initially requested the return of the deposit.

In support of his argument that ACII had agreed that he could use the funds for his own purposes, West relies primarily on a letter submitted by Mouton to FINRA on May 26, 2009 seeking withdrawal of his FINRA complaint.[3] The letter states, in pertinent part, that there was no written agreement between ACII and West regarding the use of the deposit and "since there was no written agreement . . . , the deposit was unrestricted and was at [West's] discretion during the intervening period." J.A. 909. The SEC was entitled to give this letter minimal weight, however, as it was submitted only after the funds were repaid and was contradicted by contemporaneous evidence, including two months of email exchanges wherein West did not disclose to Mouton that he had used the money for his own expenses.[4] Moreover, while Mouton did testify that he "didn't believe that [the letter] . . . was false," J.A. 404, he also testified that he did not believe that West had the right to use the deposit for West's business expenses and that he assumed the funds would be held in an escrow account. Additionally, Mouton stated in a sworn declaration that he had not given West authority to use the funds at his discretion, or even discussed that

---

[3] West also cites the non-standard nature of the transaction, and lack of written escrow agreement, as evidence that he was entitled to use the funds for his business and personal expenses. However, the lack of written restrictions on West's use of the funds does not mean that the parties agreed there would be no restrictions.

[4] Additionally, Mouton stated in an email exchange that "his only complaint was with the non-receipt of funds," and that he would "have no problem pulling [his] complaints when the transfer occurs." J.A. 753.

subject with him, and clarified that he submitted the letter because he felt that he "should have done a better job specifying use and any restrictions to use of funds . . ., rather than mistakenly assuming that the funds were being held in a separate account until closing." J.A. 911. Under these circumstances, the SEC did not err in giving minimal weight to the Mouton letter.[5]

(2) "We will not disturb the SEC's choice of sanction unless it is 'unwarranted in law or without justification in fact.'" VanCook, 653 F.3d at 137, quoting Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 186 (1973). "Typically, such an abuse of discretion will involve either a sanction palpably disproportionate to the violation or a failure to support the sanction chosen with a meaningful statement of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" Reddy v. Commodity Futures Trading Comm'n, 191 F.3d 109, 124 (2d Cir. 1999), quoting 5 U.S.C. § 557(c)(3)(A). We review each case on its own facts, and, if we conclude that the sanction is excessive or does not serve its intended purposes, we have discretion to reduce or eliminate it. See Arthur Lipper Corp. v. SEC, 547 F.2d 171, 184–85 (2d Cir. 1976). The purpose of a sanction is to protect investors, not to penalize brokers, although deterrence may be an additional consideration

---

[5] West also contends that the SEC's finding that he delayed returning the money for two months was clearly erroneous because the delay was only twenty days. This argument rests on a selective reading of the record. While there was only a twenty-day period between when West received permission from ACII's partner in the purchase lease-back transaction to return the deposit and the return of the funds, Mouton requested return of the deposit more than two months prior.

as part of the overall remedial inquiry. McCarthy v. SEC, 406 F.3d 179, 188-89 (2d Cir. 2005).

The sanction affirmed by the SEC was not an abuse of discretion. The FINRA Sanction Guidelines recommend imposing a permanent ban on a member who has improperly used client funds, unless "the improper use resulted from respondent's misunderstanding of his or her customer's intended use of the funds . . . or other mitigation exists." G.A. 36. The SEC found no mitigating factors and no misunderstanding.[6] To the contrary, it found four aggravating factors[7] and concluded that, in light of the seriousness of West's misconduct and his lack of remorse, there was a risk of future violations. Substantial record evidence supports these findings. The sanction imposed by FINRA was thus not excessive or oppressive, and was remedial rather than punitive.

(3) Finally, the SEC did not err in failing to hear oral argument. The pertinent regulation provides:

> Motions for oral argument with respect to whether to affirm all or part of an
> *initial decision by a hearing officer shall be granted* unless exceptional

---

[6] West argues that the SEC erred in finding no mitigating factors because he accepted responsibility for his actions and had an otherwise spotless disciplinary record. First, the SEC did not err in finding that West had not accepted responsibility because, despite his acknowledgment that he should have returned the money earlier and been more forthcoming with Mouton, he continued to claim that he was authorized to spend the deposit on business and personal expenses. Second, the lack of an aggravating factor – such as a prior disciplinary record – does not establish a mitigating factor, see Rooms v. SEC, 444 F.3d 1208, 1214 (10th Cir. 2006), as securities professionals are required at all times to comply with FINRA's standards of conduct.

[7] These aggravating factors were: (1) West's misconduct was intentional; (2) West engaged in deceptive acts to conceal his misconduct from ACII; (3) West benefitted from his misconduct; and (4) West's misconduct occurred over an extended period of time.

circumstances make oral argument impractical or inadvisable. *The Commission will consider appeals*, motions and other matters properly before it *on the basis of the papers filed by the parties without oral argument* unless the Commission determines that the presentation of facts and legal arguments in the briefs and record and the decisional process would be significantly aided by oral argument.

17 C.F.R. § 201.451(a) (emphasis added). Because this was an appeal, and not review of an "initial decision by a hearing officer," the SEC was not required to grant West's motion for oral argument.

We have considered all of West's remaining arguments and find them to be without merit. Accordingly, the petition for review is **DENIED** and the order of the SEC is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk