*Porteus v. O'Malley*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

DAVID PORTEUS,

> *Plaintiff-Appellant,*

> v.                                                            No. 23-969

MARTIN O'MALLEY, Commissioner of
Social Security,

> *Defendant-Appellee.*\*

_____

_____

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Plaintiff-Appellant:          PETER A. GORTON, Lachman & Gorton, Endicott, NY.

For Defendant-Appellee:          NATASHA OELTJEN (Candace Brown Casey, Special Assistant United States Attorney, Charles J. Kawas, Acting Associate General Counsel, Social Security Administration, Baltimore, MD, *on the brief*), *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Miroslav Lovric, *Magistrate Judge*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 12, 2023 judgment of the district court is **AFFIRMED**.

David Porteus appeals from a judgment affirming the denial of his application for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). The district court found that substantial evidence supported the decision of the administrative law judge (the "ALJ"), who concluded that Porteus was not disabled under the Act. Porteus timely appealed.

---

[1] The parties consented to have the case heard by a magistrate judge pursuant to 28 U.S.C. § 636.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Kohler v. Astrue*, 546 F.3d 260, 264–65 (2d Cir. 2008) (internal quotation marks omitted). We therefore must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* at 265 (internal quotation marks omitted). Under the substantial evidence standard, we can reject the ALJ's factual findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Even "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (internal quotation marks omitted).

On appeal, Porteus raises three principal challenges to the ALJ's determination that his mental-health conditions did not constitute disabilities

within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). We address each of these challenges in turn.

*First*, Porteus argues that the ALJ improperly evaluated the medical opinion evidence by failing to explain and substantiate the persuasiveness of the opinions of Dr. W. Amory Carr, a consultative examining psychologist, and Dr. E. Kamin, a state agency medical consultant. At the outset, we note that no treating source offered an opinion prior to the ALJ's decision; as a result, the relevant opinions as to Porteus's mental functioning came from three medical consultants.[2] In any event, the ALJ was only required to consider the submitted medical opinions based on the five factors set forth in the regulations and to explain how the two "most important" factors – supportability and consistency – applied to each opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("[ALJs] may, but are not required to, explain how [they] considered the [other] factors[.]"). Contrary to Porteus's assertion, the ALJ did just that, sufficiently articulating why he found Dr. Carr's opinion and Dr. Kamin's assessment persuasive to the extent that they endorsed

---

[2] Porteus does not argue on appeal that the ALJ erroneously failed to develop the record by not obtaining a medical source statement from a treating physician. Nor does he contest the ALJ's determination that the opinion of the third medical consultant, Dr. K. Lieber-Diaz – who concluded that Porteus had only non-severe mental impairments – was unpersuasive.

4

mild to moderate limitations in his ability to perform work-related mental activities. *See* Dist. Ct. Doc. No. 8 ("SSA Record") at 27–28.

Specifically, the ALJ explained that Dr. Carr's conclusions as to mild and moderate limitations, or no limitations at all, were "supported by the detailed findings from [Porteus's] mental status examination," which the ALJ summarized in his decision. SSA Record at 27; *see* 20 C.F.R. § 416.920c(c)(1) (defining supportability in terms of "the objective medical evidence and supporting explanations presented"). The ALJ likewise explained that Dr. Kamin's assessment was "supported by a detailed narrative rationale, which cite[d] supporting mental status examination findings and other evidence from the record." SSA Record at 27. This accurately described Dr. Kamin's report, which referred to Dr. Carr's examination and representative treatment notes and included details regarding Porteus's history of anxiety, depression, and suicidal ideation, as well as his current treatment and his daily activities. As to consistency, the ALJ noted that both Dr. Carr's and Dr. Kamin's opinions were "consistent with the record as a whole, including the evidence described above regarding the claimant's activities of daily living." *Id.* at 27–28. That record as a whole, as the ALJ set forth earlier in his decision, included Porteus's mental

health treatment notes during the relevant period – including records that post-dated Dr. Carr's and Dr. Kamin's opinions – Porteus's hearing testimony, and evidence of his daily activities. *See id.* at 24–27. Finally, the ALJ adequately explained that he found unpersuasive Dr. Carr's assessment of certain marked work-related limitations, concluding that such limitations were unsupported by and inconsistent with Dr. Carr's own mental status examination findings, Porteus's response to treatment, and relevant aspects of his daily activities.

Porteus contends that the ALJ's assessment of the opinions was conclusory, and that evidence post-dating the opinions rendered them stale and inconsistent with the record. We disagree. The ALJ explicitly recognized that Porteus's mental health symptoms "waxed and waned in severity" throughout the relevant period, and that after Dr. Carr and Dr. Kamin prepared their opinions, Porteus had a "temporary worsening" in symptoms that resulted in a ten-day hospitalization for suicidal ideation in August 2020. *See id.* at 26. The ALJ also considered, however, that Porteus responded positively to treatment during and after his hospitalization and that subsequent outpatient records indicated improvement and stability. *See id.* at 25–27. While Porteus may disagree with the ALJ's assessment of the treatment notes and their consistency with the medical

6

opinions, the ALJ was entitled "to weigh the conflicting evidence in the record" and resolve any such conflicts. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Nor did the ALJ err, as Porteus suggests, by failing to explicitly repeat his prior examination of the record as part of the persuasiveness analysis. *See Brault*, 683 F.3d at 448 ("An ALJ does not have to state on the record every reason justifying a decision.").

In short, the ALJ adequately explained the supportability and consistency of each medical opinion in the record and found the limitations assessed by Dr. Carr and Dr. Kamin to be persuasive in almost all respects. And the record before the ALJ contained no other opinions assessing greater limitations than the ones set forth in Dr. Carr's and Dr. Kamin's opinions. We therefore see no error in the ALJ's conclusions.

*Second*, Porteus contends that the ALJ failed to support his residual functional capacity ("RFC") finding with substantial evidence. In making the RFC determination, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Schillo*, 31 F.4th at 78 (internal quotation marks omitted); *see also id.* ("[T]he ALJ's RFC

7

conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.").   In the end, the ALJ's findings need only "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence."   *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ concluded that, based on the medical opinions and other evidence, Porteus could engage in a full range of work at all exertional levels, but with a variety of mental limitations.   In particular, the ALJ concluded that Porteus could "understand, remember, and carry out only simple and routine tasks"; "concentrate, persist, and maintain pace in a work setting to the extent necessary to perform" such tasks; "interact no more than occasionally with supervisors, co-workers, or the public"; and "appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks."   SSA Record at 25.   Substantial evidence supports this RFC determination, and Porteus has not demonstrated that a reasonable factfinder would have to assess any greater limitations.   *See Schillo*, 31 F.4th at 74.

Porteus nevertheless argues that the ALJ failed to account for limitations in his ability to stay on task and attend work, as substantiated by the medical

8

opinions and other evidence. But the record does not compel such a finding. For starters, Dr. Carr opined that Porteus had no pace or concentration-related limitations, and only a mild-to-moderate limitation in sustaining an ordinary routine and regular attendance at work. And while Dr. Kamin opined that Porteus was moderately limited in his ability to work without interruption and at a consistent pace without rest periods, she also concluded that Porteus was *not* significantly limited in his ability to maintain attention and concentration for extended periods, stay on schedule, and maintain regular attendance. We have consistently held that moderate limitations in these and related mental functional capacities do not prevent individuals from performing "unskilled work." *Zabala v. Astrue*, 595 F.3d 402, 405–06, 409–10 (2d Cir. 2010); *see, e.g.*, *Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (rejecting claim that moderate limitations in concentration and attendance-related areas required RFC limitations to staying on task or attendance).

Nor are we persuaded that the ALJ impermissibly "cherry-picked" from the record and ignored evidence of Porteus's conditions as they relate to his ability to stay on task and maintain attendance. *Cf. Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). The ALJ explicitly discussed, for example, evidence regarding the

9

frequency and nature of Porteus's panic attacks, which Porteus described as triggered by stressful situations. And more broadly, the ALJ examined the treatment notes from the relevant period and reasonably concluded that they "show[ed] a generally stable mental status" and that Porteus's disorders "[could] be managed with treatment." SSA Record at 26; *see id.* at 25–28. To be sure, the ALJ acknowledged that Porteus's condition throughout this period was not always stable and at one point worsened, culminating in a ten-day voluntary hospitalization for suicidal ideation in August 2020. But the record reflects that this worsening followed significant situational stressors – including problems with his girlfriend and roommate and an impending eviction – and the ALJ observed that Porteus's conditions improved with treatment in the months that followed. *See Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (substantial evidence supported ALJ's conclusion that claimant could maintain regular and continuous work, where treatment notes showed claimant was "stable and responded well to treatment," notwithstanding two hospitalizations due to mental conditions). While Porteus faults the ALJ for not citing and discussing each treatment record in detail, the ALJ need not "discuss every piece of evidence submitted," and a "failure to cite specific evidence does not indicate that such

10

evidence was not considered." *Brault*, 683 F.3d at 448 (internal quotation marks omitted).[3]  Substantial evidence supports the finding that Porteus would not be off task or absent to any significant degree in an unskilled job with only simple and routine tasks.

Contrary to Porteus's assertions, the ALJ's RFC determination also adequately accounted for his workplace adaptation and social interaction limitations.  The ALJ acknowledged Porteus's reported difficulty in handling stress, including his testimony that he had a low stress threshold and that stress or changes in schedule triggered his anxiety and other symptoms.  While Porteus testified that even routine situations could trigger stress, the ALJ considered further evidence including:  (1) examination findings noting Porteus's fair insight and judgment and coherent and goal-directed thoughts; (2) his ability to live independently, maintain a relationship (with his girlfriend), and engage in hobbies; and (3) his overall positive response to treatment.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[The ALJ] is not required to accept the claimant's

---

[3] Porteus also contends the ALJ erred by considering evidence of his routine daily activities because such evidence did not bear on his ability to perform work.  But our prior decisions make clear that an ALJ may consider evidence regarding the claimant's daily activities in weighing and evaluating the record to reach the RFC determination.  *See, e.g.*, *Cichocki*, 729 F.3d at 178; *Schillo*, 31 F.4th at 77 n.4.

11

[reports] without question; he may [instead] exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."). Moreover, Dr. Kamin, whose opinion the ALJ found to be fully persuasive, concluded that Porteus had no significant adaptation limitations, including in his ability to respond appropriately to changes in the work setting. Substantial evidence supports the ALJ's findings that Porteus was limited to only simple and routine tasks in an unskilled job, with no more than ordinary changes and only occasional interactions with supervisors, coworkers, and the public. Similarly, the social interaction limitations found by the ALJ were supported by Porteus's own statements, Dr. Kamin's and Dr. Carr's opinions, and evidence of Porteus's ability to do daily activities in public.

*Third*, Porteus argues that the new evidence presented to the Appeals Council – the opinion of his therapist, licensed master social worker Diana Liz-Reyes, who assessed significantly greater limitations than did Dr. Carr and Dr. Kamin – renders the ALJ's determination unsupported by substantial evidence. We disagree. "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is

substantial evidence to support the decision of the [Commissioner]." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *accord Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).

We conclude that Ms. Liz-Reyes's opinion "does not add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010). Devoid of any objective medical findings or reference to treatment records, the opinion "does not explain [any] facts or reasoning that led" to the limitations that Ms. Liz-Reyes assessed, *see id.* at 230, but instead only lists Porteus's diagnoses and medications (and their side effects). Ms. Liz-Reyes's assessment of moderate, marked, and extreme limitations in work-related functions is also contradicted by evidence in the record, including the opinions of Dr. Kamin and Dr. Carr, indicating that Porteus would have no significant, or at most moderate, limitations in those same functions. We see no reason to conclude that, even considering Ms. Liz-Reyes's opinion, substantial evidence does not support the ALJ's decision.[4]

---

[4] Because we conclude that substantial evidence supports the RFC determination, "we necessarily reject [Porteus]'s vocational expert challenge." *Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021).

We have considered Porteus's remaining arguments and find them without

merit.   Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court