(Docs. 6, 7)
Geoffrey W. Crawford, Chief Judge, U. S. District Court
Plaintiff Frank K. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB). (Doc. 1.) Pending before the court is Plaintiff's motion to reverse the decision of the Commissioner and remand for calculation of benefits (Doc. 6) and the Commissioner's motion to affirm (Doc. 7). For the reasons stated below, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.
*166 Background
Plaintiff was 53 years old on his amended alleged disability onset date of November 8, 2001.[1] He was previously employed full-time for many years with the State of Vermont as a bridge mechanic, bridge foreman, and road foreman. (AR 478.) Much of that work was physical. The bridge job required concrete work, jackhammering, and climbing staging, and the road foreman job was a "working" foreman position that included directing snowplowing and also mowing and picking up roadside litter. (AR 479.)
Plaintiff began experiencing pain in his shoulders and knees while employed with the State. The bridge work required him to kneel on concrete. (AR 489.) His knees would "give right out" and he could no longer navigate the terrain to work on roadside litter. (AR 486.) He also had pain in his arms and shoulders. (AR 482.) He testified that he did not want to leave the State job for any medical reason because he "always assumed that he would heal up or get better." (AR 482.) But he testified that his condition "never did" improve, and instead "went the other way." (Id. ) He left employment with the State of Vermont in 1996. (AR 478.)
After 2001 Plaintiff did some "[v]ery limited" work driving a stick-shift box truck doing short hauls approximately one day a month. (AR 479-80.) Plaintiff testified that shifting the truck "raise[d] hell" with his shoulder and operating the clutch hurt his knee. (AR 481.) His pain "accumulate[ed]" each day that he worked that job, such that by the end of the day he felt sore and could "hardly lift my arm." (AR 482, 485.) He took painkillers at night. (AR 485.)
The procedural history in this case dates back almost a full decade. Plaintiff filed an application for DIB on December 2, 2009. (AR 59.) Administrative Law Judge Paul G. Martin issued unfavorable decisions on June 24, 2011 (AR 9-16) and May 23, 2014 (AR 457-66), both of which this court reversed and remanded in separate decisions in 2013 and 2015, respectively. See [Frank K. ] v. Colvin , No. 2:14-cv-184, 2015 WL 5554987 (D. Vt. Sept. 21, 2015) (the " 2015 remand order "); [Frank K. ] v. Comm'r of Soc. Sec. , No. 2:12-CV-277, 2013 WL 3967928 (D. Vt. July 31, 2013) (the " 2013 remand order "). The only argument that Plaintiff raised in his appeal of ALJ Martin's 2014 decision was that the ALJ had erred at step five of the sequential analysis. [Frank K. ], 2015 WL 5554987, at *4.
Notably, ALJ Martin's 2014 decision added limitations that were not included in the 2011 decision, including a limitation to "occasional reaching" with both upper extremities. (AR 463.)[2] In its 2015 remand order, the court observed that ALJ Martin did not present the VE at the 2014 hearing with a hypothetical scenario that included a limitation of "occasional reaching" in all directions. [Frank K. ], 2015 WL 5554987, at *5. The court concluded that ALJ Martin "erred at step five by relying on occupations that could not be performed under the RFC determination stated in the ALJ's decision." Id. at *4. The court determined *167 that remand was required to obtain testimony from a VE "about jobs that a hypothetical claimant with [Plaintiff's] vocational factors and functional limitations, including the ALJ's assessment of only occasional reaching , could do." Id. at *8.
Acting on the 2015 remand order, the Appeals Council remanded the case "for further proceedings consistent with the order of the court." (AR 860.) The remanded case was assigned to ALJ Dory Sutker, who convened a hearing on May 10, 2016. (AR 791-838.) Plaintiff appeared at the hearing and was represented by attorney Craig Jarvis. Two experts also testified: Vocational Expert (VE) Christine Spaulding and agency medical expert Dr. Arthur Brovender, an orthopedic surgeon who reviewed the medical exhibits and offered opinions about Plaintiff's medical status as of November 2001.
Dr. Brovender opined that Plaintiff is limited to "occasional reaching overhead with his right shoulder" but that Plaintiff has "[n]o limitation" reaching in any other direction. (AR 810.) ALJ Sutker asked VE Spaulding a series of hypothetical questions. The third hypothetical question was the same as the first hypothetical question, but with the modification that "reaching in all directions would be limited to occasional." (AR 826.) VE Spaulding testified that the additional reaching limitation would preclude all work. (Id. ) After the hearing, another VE, Dennis King, supplied answers to written Vocational Interrogatories on October 27, 2016 and March 8, 2017. (AR 972-76, 988-92.) ALJ Sutker issued an unfavorable decision on September 27, 2017. (AR 767-81.) Plaintiff appealed to this court on January 24, 2018. (Doc. 1.)
ALJ Sutker's Decision
Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. McIntyre v. Colvin , 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." Id. Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." Id. Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." Id. Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." Id.
Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." Id. ; see 20 C.F.R. § 404.1520. The claimant bears the burden of proving her case at steps one through four. McIntyre , 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue , 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).
ALJ Sutker began her analysis with a finding that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2001. (AR 769.) Employing the five-step sequential analysis, the ALJ first found that Plaintiff did not engage in substantial gainful activity during the period from the November 8, 2001 alleged onset date through his date last insured of December 31, 2001. (AR 770.)
*168 At step two, the ALJ noted that the relevant time period in the case is a two-month period between November 8 and December 31, 2001.[3] (Id. ) She found that, through the date last insured, Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees and osteoarthritis of the AC joint of the right shoulder. (Id. ) The ALJ noted other impairments that appear in the record but that the ALJ found non-severe, including right elbow lateral epicondylitis,[4] osteoarthritis of the hands, and left eye amblyopia.[5] (AR 771.) At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 772.)
Next, the ALJ concluded that, through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform light worked as defined in 20 C.F.R. § 404.1567(b)[6] except as follows:
[Plaintiff] was limited from standing and walking more than 4 hours total during the workday. He was able to sit for up to 6 hours. He could occasionally climb ramps and stairs, but he could not climb ropes/ladders or scaffolds. He could occasionally crouch and kneel. He could frequently stoop, but he could not crawl. He had monocular vision. He needed to avoid unprotected heights and dangerous machinery. He was also limited to frequent grasping/gripping, pushing and pulling with the upper extremities. The claimant can perform occasional reaching overhead with his right upper extremity.
(AR 772-73.) ALJ Sutker assigned "significant weight" to Dr. Brovender's opinion. (AR 779.) Consistent with that assignment of weight, the reaching limitation in the RFC found by ALJ Sutker (occasional overhead reaching with right upper extremity) is less restrictive than ALJ Martin's 2014 finding that Plaintiff is limited to "occasional reaching" with both upper extremities in all directions. At step four, ALJ Sutker found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (AR 780.)
At step five, the ALJ considered Plaintiff's age, education, work experience, and the RFC that she had determined, and concluded that, through the date last insured, there were jobs that existed in significant numbers in the national economy *169 that Plaintiff could have performed. (AR 780.) According to the ALJ, VE King opined that, given those factors, an individual could perform representative occupations such as information clerk, survey worker, and recreation aide. (AR 781, see also AR 991.) The ALJ found that to be consistent with the information in the Dictionary of Occupational Titles (DOT) and that, based on the VE's testimony, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (AR 781.) The ALJ accordingly concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from November 8, 2001 through December 31, 2001. (Id. )
Standard of Review
The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).
In considering the Commissioner's disability decision, the court conducts "a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Brault v. Soc. Sec. Admin., Comm'r , 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) ); see also 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Poupore , 566 F.3d at 305 (quoting Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd. , 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) ). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would have to conclude otherwise ." Brault , 683 F.3d at 448 (quoting Warren v. Shalala , 29 F.3d 1287, 1290 (8th Cir. 1994) ). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." Dousewicz v. Harris , 646 F.2d 771, 773 (2d Cir. 1981).
Analysis
Plaintiff advances five arguments on appeal. Plaintiff's first two arguments invoke separate "branches" of the law-of-the-case doctrine. First, Plaintiff asserts that the court's mandate in the 2015 remand order was "to evaluate whether Plaintiff could do any occupations at the light exertional level with a limitation of occasional reaching in all directions." (Doc. 6 at 7.) Plaintiff contends that ALJ Sutker improperly went beyond the mandate when she changed the RFC finding to include a less restrictive reaching limitation. (See ids="1218301" index="27" url="https://cite.case.law/f2d/646/771/#p773">id. ) Second, Plaintiff argues that, under the law-of-the-case doctrine, Dr. Brovender's testimony is insufficient to justify changing the Commissioner's previous more restrictive reaching limitation. (Id. )
For his third argument, Plaintiff contends that Dr. Brovender's testimony "is not substantial evidence to support a finding that the Plaintiff did not have limitations *170 to reaching beyond overhead reaching as it does not account for the effect of pain on the Plaintiff['s] residual functional capacity." (Id. at 9.) Fourth, Plaintiff asserts that the ALJ erroneously relied on VE King's answers to interrogatories because those answers were in "apparent conflict" with the DOT and the conflict was not resolved by the VE or the ALJ. (Id. ) Finally, Plaintiff argues that he should be found disabled and that the claim should be remanded for the calculation of benefits. (Id. at 10.) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and complies with applicable legal standards. (Doc. 7 at 1.)
I. Law of the Case and the Mandate Rule
This court reviewed the law-of-the-case doctrine in Ayer v. Commissioner of Social Security , No. 5:15-cv-15, 2016 WL 11580280 (D. Vt. May 11, 2016) :
There are two "branches" of the law-of-the-case doctrine. One branch is a nonbinding doctrine that "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " Ali v. Mukasey , 529 F.3d 478, 490 (2d Cir. 2008) (quoting United States v. Tenzer , 213 F.3d 34, 39 (2d Cir. 2000) ). The doctrine's second branch is the nondiscretionary "mandate rule," which flows from the hierarchical decision-making systems it concerns. In re Coudert Bros. LLP , 809 F.3d 94, 101 n.2 (2d Cir. 2015). Under the mandate rule, "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co. , 762 F.3d 165, 175 (2d Cir. 2014).
Id. at 9-10. As stated in Ayer , there is an "administrative version" of the mandate rule in the regulations. Id. at 10. Namely, the procedures in 20 C.F.R. § 404.977 apply when a federal court remands a case to the Commissioner for further consideration and when (as in Plaintiff's case) the Appeals Council elects to remand the case to an ALJ. 20 C.F.R. § 404.983. Under § 404.977(b), the ALJ hearing the remanded case "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."
It is true that the regulations simultaneously provide that "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case." Id. § 404.983. But courts in the Second Circuit have recognized that the law-of-the-case doctrine applies to administrative agencies on remand and "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings." Marvin v. Colvin , No. 3:15-cv-74 (GLS/CFH), 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (quoting Brachtel v. Apfel , 132 F.3d 417, 419 (8th Cir. 1997) ); Calderon v. Astrue , 683 F.Supp.2d 273, 276 (E.D.N.Y. 2010) (law-of-the-case and mandate rule apply with equal force to Social Security appeals). District courts remanding a social security case also have the power to limit the scope of the remand. Marvin , 2016 WL 2968051, at *2. Consistent with these authorities, the Commissioner concedes that "any issue can be considered following a Court remand, except *171 what is precluded by the Court's remand order." (Doc. 7 at 5.)
The parties disagree about whether this court's 2015 remand order precluded revisiting the RFC that ALJ Martin found in 2014. According to Plaintiff, the mandate was to do nothing more than "to evaluate whether the Plaintiff could do any occupations at the light exertional level with a limitation of occasional reaching in all directions." (Doc. 6 at 7.) Plaintiff asserts that once the VE testified that Plaintiff could not do any occupations with those limitations, the ALJ's analysis should have stopped and Plaintiff should have been granted benefits. The Commissioner maintains that the 2015 remand order did not address whether substantial evidence supported the RFC found by ALJ Martin in his 2014 decision and did not preclude reconsideration of the RFC. (Doc. 7 at 5.)
A. The Mandate Rule Precluded Revisiting the 2014 RFC
As in Ayer , the court proceeds by analogy to the mandate rule as it applies to judicial proceedings. The Second Circuit has observed that the mandate rule "does not extend to issues an appellate court did not address." New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co. , 352 F.3d 599, 606 (2d Cir. 2003) (quoting Moore v. Anderson , 222 F.3d 280, 284 (7th Cir. 2000) ). However, "[t]he mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui v. United States , 614 F.3d 50, 53 (2d Cir. 2010). "To determine whether an issue may be reconsidered on remand, a district court 'should look to both the specific dictates of the remand order as well as the broader spirit of the mandate.' " Id. (quoting United States v. Ben Zvi , 242 F.3d 89, 95 (2d Cir. 2001) ).
Here, the specific dictates of the 2015 remand order required the Commissioner to obtain VE testimony "about jobs that a hypothetical claimant with [Plaintiff's] vocational factors and functional limitations, including the ALJ's assessment of only occasional reaching , could do." [Frank K. ], 2015 WL 5554987, at *8. Plaintiff acknowledges that ALJ Sutker did obtain VE testimony on that issue. (Doc. 6 at 6.) But ALJ Sutker also revisited Plaintiff's RFC and assessed a reaching limitation that was less restrictive than ALJ Martin's. For the reasons stated below, the court concludes that this violated the mandate rule.
It is true that the 2015 remand order made no express determination about the RFC found by ALJ Martin in 2014 or whether that RFC was supported by substantial evidence. In particular, the 2015 remand order includes no obvious express statement requiring the ALJ on remand to adhere to ALJ Martin's 2014 assessment of only "occasional" reaching bilaterally in all directions.[7] That is unsurprising, since the only two issues on appeal in that case were step-five issues. Id. at *4.
But the fact that the court in 2015 was presented only with step-five issues on appeal and remanded solely to address an error at step five demonstrates that all *172 issues at prior steps of the sequential analysis were impliedly resolved by the court's mandate. Indeed, the district court in a social security appeal "is never called upon to address issues resolved in the claimant's favor; the claimant obviously cannot challenge such determinations, and the Commissioner cannot challenge them because they were made by him (or his delegate) in the first place." Calderon , 683 F.Supp.2d at 276-77, quoted in Ayer , No. 5:15-cv-15, at 11."[I]t follows from this procedural anomaly that when a district court passes judgment on, for example, an ALJ's step-five determination, it has implicitly affirmed the determination at all prior steps ...." Calderon , 683 F.Supp.2d at 277. That is precisely what occurred in the 2015 remand order. Cf. Ayer , No. 5:15-cv-15, at 11-12 (ALJ erroneously reconsidered prior favorable step-two determinations on remand from Appeals Council; the Appeals Council implicitly affirmed those favorable determinations because the plaintiff did not (and could not) challenge them).[8]
This conclusion also makes sense from the standpoint of efficiency. If the ALJ was free on remand to revisit prior steps in the sequential evaluation process, the step-five error identified in the 2015 remand order would be reduced to an "irrelevancy." Calderon , 683 F.Supp.2d at 277. The 2015 remand order specifically required evidence on the vocational implications of ALJ Martin's 2014 assessment that Plaintiff was limited to "only occasional reaching ." [Frank K. ], 2015 WL 5554987, at *8. It would be inefficient remand for vocational evidence based on that functional assessment if the ALJ could simply alter the assessment on remand.[9]
B. No "Cogent" and "Compelling" Reasons to Revisit 2014 RFC
Some courts have held that there might be some cases where an ALJ on remand could properly revisit determinations at earlier steps in the sequential analysis than those addressed by the remanding court. As the Marvin court suggested, an ALJ might do so where there are "cogent" and "compelling" reasons such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Marvin , 2016 WL 2968051, at *3 (footnote omitted) (quoting Ali v. Mukasey , 529 F.3d 478, 490 (2d Cir. 2008) ); see also Calderon , 683 F.Supp.2d at 277 (suggesting that step-four determination implicitly reached by remanding court could be changed on remand for " 'cogent' and 'compelling' reasons").
The court is not convinced that this exception is available here. The "cogent" and "compelling" reasons described in Ali are reasons for revisiting a prior ruling under the non-binding branch of the law-of-the-case doctrine. Ali , 529 F.3d at 490. But the mandate rule is not so discretionary. See United States v. Sawyer , 907 F.3d 121, 125 (2d Cir. 2018) ("The mandate rule, a component of the law of the case doctrine, requires district courts to comply with our *173 holdings regarding that case."), cert. denied , --- U.S. ----, 139 S.Ct. 1300, --- L.Ed.2d ---- (2019) ; see id. at 126 (Crawford, J., dissenting) ("It is not necessary to agree with an appellate ruling, but under any system of the rule of law it is necessary to follow it."). Here, as in Ayer , the court's analysis stems from the non-discretionary mandate rule.
The court nevertheless assumes, without deciding, that ALJ Sutker could properly revisit issues at prior steps in the sequential analysis if "cogent" and "compelling" reasons were present.[10] The court considers the Commissioner's assertion that ALJ Sutker had new evidence: the opinion of agency medical expert Dr. Brovender. (Doc. 7 at 6-7.) As stated above, Dr. Brovender opined at the May 10, 2016 hearing before ALJ Sutker that Plaintiff is limited to "occasional reaching overhead with his right shoulder" but that Plaintiff has "[n]o limitation" reaching in any other direction. (AR 810.)
The ALJ assigned "significant weight" to Dr. Brovender's testimony "because he performed the most recent claim review and he provided a detailed explanation for the rationale for the basis of his opinion." (AR 779.) Particularly relevant to reaching limitations, the ALJ noted that Dr. Brovender testified "that the claimant's shoulder arthritis can cause problems with overhead reaching, but does not usually cause problems reaching forward, and that the x-rays showed mild and not severe degenerative changes during the relevant time." (Id. ; see also AR 217 (radiographs in 1987 supported "[m]ild" degenerative joint disease in right shoulder), AR 815 (Dr. Brovender's testimony).)
Plaintiff argues that Dr. Brovender's testimony is not sufficiently "compelling" to deviate from the law of the case. (See Doc. 6 at 7.) The Commissioner maintains that the ALJ properly relied on Dr. Brovender's testimony. (Doc. 7 at 7.) Having carefully considered the parties' arguments and the record evidence, the court agrees with Plaintiff that Dr. Brovender's testimony does not rise to level of a "compelling" reason to deviate from ALJ Martin's restrictive 2014 determination about Plaintiff's reaching limitations.
The regulations list several factors that ALJs must consider when evaluating medical opinions: the nature of the professional relationship (examining or treating), supportability, consistency with the record, specialization, and other factors. 20 C.F.R. § 404.1527(c)(1)-(6). As ALJ Sutker recognized, Dr. Brovender is a specialist (orthopedic surgeon) and he performed the most recent claim review in this case. (AR 779.) The Commissioner also notes that agency medical consultants are highly qualified physicians with expertise in evaluating medical issues in disability claims. (Doc. 7 at 8.) According to the Commissioner, Plaintiff received no treatment for his shoulder during the period at issue and, prior to the relevant period, he last sought treatment for shoulder pain in April 1996. (Doc. 7 at 9.) As to supportability, the Commissioner refers to the fact that Plaintiff's shoulder x-rays showed only mild changes. (Id. ) Regarding consistency, the Commissioner notes that independent medical examiner Dr. Philip J. Davignon opined on October 13, 2010 that, as of 1996, Plaintiff's work restrictions included minimizing "overhead use of the upper extremities." (AR 426 (emphasis added).)
These factors do not comprise a compelling basis for reversing course on the issue *174 of Plaintiff's reaching capacity during the relevant period. Although Dr. Brovender is a specialist and an agency medical consultant, he never examined or treated Plaintiff. Plaintiff's lack of treatment for shoulder pain during the relevant two-month period in this case is not particularly enlightening, both because the relevant period is so brief and because Plaintiff had ceased all full-time employment by that time and therefore was not required to perform reaching tasks for any vocational reason.
The 1987 imaging that supported a finding of "mild" degenerative joint disease in the right shoulder was from many years before the amended alleged onset date. And as Dr. Brovender himself testified, arthritis is a "progressive disease." (AR 812.) Similarly, Dr. Davignon's assessment related to limitations as of 1996-five years before the amended alleged onset date. Moreover, Dr. Davignon cautioned that Plaintiff's "arthritic condition could be aggravated with physical activity and depending on the degree of physical activity could aggravate the underlying arthritic condition and limit the claimant's ability to function." (AR 426.)
II. Remaining Issues
The court's conclusion that the ALJ violated the mandate rule makes it unnecessary to address Plaintiff's remaining issues on appeal save for the question of the appropriate remedy. Plaintiff asserts that ALJ Sutker should have followed the mandate in the 2015 remand order, and that a remand for calculation of benefits is warranted because there are no gaps in the record. (Doc. 6 at 10.)
Courts typically remand social security disability cases for further development of the evidence when there are "gaps in the administrative record" or when the ALJ "has applied an improper legal standard." Rosa v. Callahan , 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting Pratts v. Chater , 94 F.3d 34, 39 (2d Cir. 1996) ). Where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," however, courts have "opted simply to remand for a calculation of benefits." Id. (citing Balsamo v. Chater , 142 F.3d 75, 82 (2d Cir. 1998) ).
The court concludes that the latter option is appropriate in this case. Here, VE Spaulding's testimony at the May 10, 2016 hearing filled the only remaining gap in the record. ALJ Sutker posed a hypothetical to VE Spaulding describing an individual with Plaintiff's age, education, and past work experience, plus the ability to do only light work with restrictions including the restriction that reaching in all directions would be limited to occasional. (AR 822-23, 826.) VE Spaulding testified that the additional reaching limitation would preclude all work. (AR 826.) Since ALJ Martin's 2014 RFC is the law of the case and was not materially more restrictive than the hypothetical posed to VE Spaulding, the proper disposition is a determination that Plaintiff was disabled from the November 8, 2001 amended alleged onset date through the December 31, 2001 date last insured.
Conclusion
Plaintiff's motion to reverse (Doc. 6) is GRANTED and the Commissioner's motion to affirm (Doc. 7) is DENIED. The court REMANDS the matter for calculation of benefits.

The following factual overview is drawn from Plaintiff's testimony at his May 8, 2014 hearing, much of which was summarized at Plaintiff's subsequent May 10, 2016 hearing. (See AR 796-804.)

ALJ Martin failed to include this reaching limitation in his boldface RFC assessment constituting heading number five in the 2014 decision. (See AR 461-62.) Instead, the reaching limitation appears later in the body of the decision. (See AR 463.) As the court noted in its 2015 remand order, this inconsistency was not a "critical error," but it did add "confusion" to ALJ Martin's 2014 decision. [Frank K. ], 2015 WL 5554987, at *6.

The sheer quantity of advocacy, expert, and adjudicative attention to this case over the course of almost a decade might appear to be out of proportion to a claim that ultimately seeks benefits for only a two-month period 18 years ago. The court is nevertheless dedicated to adjudicating this appeal regardless of the quantity of benefits that are at stake.

Lateral humeral epicondylitis is an inflammation commonly known as tennis elbow. See Stedman's Medical Dictionary 282180 (28th ed. 2006) (Westlaw).

Amblyopia is "[p]oor vision caused by abnormal development of visual areas of the brain in response to abnormal visual stimulation during early development." Stedman's Medical Dictionary 26780 (28th ed. 2006) (Westlaw).

The regulations define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The 2015 remand order does state that "remand is required so that the ALJ may obtain testimony from a VE about a hypothetical claimant who possesses [Plaintiff's] particular limitations, as assessed by the ALJ ." [Frank K. ], 2015 WL 5554987, at *6 (emphasis added). The first reference to "the ALJ" in that sentence obviously means the ALJ on remand. The second reference to "the ALJ" could arguably mean the ALJ on remand or ALJ Martin in his 2014 decision. For the reasons below, the court concludes that the latter meaning is the correct one.

At least one court has announced that the scope of a social security remand is not limited unless the court expressly states that it is. Marvin , 2016 WL 2968051, at *3. The Commissioner cites no decision of this court adopting such a rule.

It is also worth noting that the 2013 remand order included an express direction to reconsider misstatements in the RFC portion of ALJ Martin's 2011 decision, see [Frank K. ], 2013 WL 3967928, at *7, while the 2015 remand order included no direction or invitation to return to any issues preceding step five. That fact lends additional support to the conclusion that the court in 2015 did not anticipate or authorize the scope of the remand to exceed consideration of step-five issues.

The court reiterates that this assumption is a dubious one. The exception could easily swallow the rule, since an ALJ could revisit an issue decided by the district court simply by calling a new medical expert-precisely what ALJ Sutker did in this case.