[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13974
Non-Argument Calendar
_____

D.C. Docket No. 8:19-cv-01186-JRK


RONNIE BACON, JR.,

                                                        Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 23, 2021)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Ronnie Bacon, Jr., appeals the district court's affirmance of the Commissioner's denial of his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  He argues that the Administrative Law Judge ("ALJ") erred by failing to resolve an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT") regarding Bacon's ability to perform work as a mail clerk and a cleaner and polisher, where his Residual Functional Capacity ("RFC") limited him to performing simple, routine, and repetitive tasks in a lower-stress work environment without fast-paced production quotas.  He argues that the mail clerk position was inconsistent with his RFC because it had a General Educational Development ("GED") reasoning level of three, and the cleaner and polisher position was inconsistent because it required constant reaching, handling, and near acuity.  Second, he argues that the ALJ erred by accepting the VE's estimate that there were 325,000 cleaner and polisher jobs that existed in the national economy because that number was clearly and unmistakably unreasonable.  We address each claim in turn.

I.

When the Appeals Council denies review of the ALJ decision, as here, we review *de novo* the legal principles upon which the ALJ's decision is based, but the

ALJ's factual findings are conclusive if supported by substantial evidence. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018). We review *de novo* the district court's determination as to whether the ALJ's decision was supported by substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted). We will deem the Commissioner's decision supported by substantial evidence even if the preponderance of the evidence weighs against it. *Id.* at 1158-59. However, we will not "affirm simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). We will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). We apply harmless error review to Social Security cases. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A),

3

1382c(a)(3)(A). To determine whether a claimant is disabled, the ALJ applies a five-step sequential analysis. 20 C.F.R. § 404.1520(a). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform his past relevant work, in light of his RFC; and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4).

If the claimant successfully demonstrates an impairment that prevents him from performing his past work, then the analysis moves to step five, and the burden temporarily shifts to the Social Security Administration ("SSA") to show the existence of other jobs in the national economy that the claimant can perform, given his impairments. *Washington*, 906 F.3d at 1359. The ALJ may use a VE's testimony to determine whether the claimant has the ability to adjust to other work in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1566(e). A VE "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240. If the SSA makes that showing, then the burden shifts back to the claimant to show that she is unable to perform the jobs suggested by the SSA. *Washington*, 906 F.3d at 1359. In other words, step five of the analysis asks the

ALJ to determine, in light of the DOT and the VE's testimony, "whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments." *Id.* at 1360.

According to Social Security Ruling 00-4p ("SSR 00-4p"), the ALJ has an affirmative duty to identify and resolve apparent conflicts between a VE's testimony and information in the DOT. SSR 00-4p, 65 Fed. Reg. 75759-01, 75760 (Dec. 4, 2000). If the VE's evidence appears to conflict with the DOT, the ALJ will obtain a reasonable explanation of the apparent conflict. *Id.* Where the VE's evidence is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the VE's evidence to support a determination or decision that a claimant is or is not disabled. *Id.*

Although SSR 00-4p is not binding on us, the SSA is nevertheless bound to follow it, even where the internal procedures espoused in that interpretation are more rigorous than otherwise would be required. *Washington*, 906 F.3d at 1361. In *Washington*, we rejected the Commissioner's argument that SSR 00-4p only required the ALJ to ask the VE whether his testimony was consistent with the DOT. *Id.* at 1361-62. Instead, we held that SSR 00-4p imposed upon the ALJ an affirmative obligation to identify any apparent conflicts and to resolve them, and an ALJ's failure to discharge that duty means that the ALJ's decision is not supported by substantial evidence. *Id.* at 1362.

"Apparent" means "apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id.* at 1366. In other words, the ALJ is required to identify conflicts that are "reasonably ascertainable or evident." *Id.* In *Washington*, we took "apparent" to mean "seeming real or true, but not necessarily so," and concluded that the conflict between the VE's testimony and the DOT "present[ed] one of the clearest examples of an 'apparent conflict.'" *Id.* (quotation marks omitted). There, the claimant suffered from nerve damage stemming from his diabetes that caused pain and numbness in his extremities and diminished visual acuity. *Id.* at 1356. At step five of the sequential analysis, the ALJ had asked the VE whether jobs existed in the national economy for someone who could only engage in "occasional" fine manipulation. *Id.* at 1366. The VE identified two jobs that were described by the DOT as involving "frequent" fine manipulation. *Id.* We characterized the conflict as apparent and important because the difference between performing an action "occasionally" versus "frequently" is "patent and significant in determining whether work exists in the national economy for a claimant." *Id.* Accordingly, because "the conflict [was] manifest from even a cursory, side-by-side comparison of the VE's testimony and the DOT," we determined that the ALJ "unmistakably" breached his duty. *Id.*

The DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in

6

specific settings."  SSR 00-4p, 65 Fed. Reg. at 75760.  A VE "may be able to provide more specific information about jobs or occupations than the DOT."  *Id.* The mail clerk job has a Specific Vocational Preparation ("SVP") level of two and a reasoning level of three.  DOT 209.687-026.  A job with the reasoning level of three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

The cleaner and polisher job has an SVP level of two and a reasoning level of one.  DOT 709.687-010.  A job with a reasoning level of one requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."  *Id.*  The DOT description states that a cleaner and polisher "[c]leans and polishes chromium or nickel plated articles with cloth and liquid cleanser.  May remove paint or other foreign matter adhering to surface of article with solvent, knife, or steel wool.  May be designated according to type of metal cleaned as Chrome Cleaner (any industry); Nickel Cleaner (any industry)."  *Id.*  It further states that reaching, handling, and near acuity are "constantly" required.  *Id.*

Even if the VE's testimony that Bacon could perform work as a mail clerk was apparently inconsistent with his RFC limitations to "simple, routine, and repetitive tasks," the inconsistency would have been harmless. *See Diorio*, 721 F.2d at 728. The VE testified, and the ALJ found, that Bacon also was capable of performing work as a cleaner and polisher, which has a reasoning level of one. Moreover, Bacon does not assert that his limitations to "simple, routine, and repetitive tasks" apparently conflict with the cleaner and polisher job's reasoning level.

Instead, he challenges that there was a different apparent conflict as to the cleaner and polisher job because his RFC limits him to "lower stress work environment[s], without fast[ paced] production quotas" while the DOT describes the position as requiring constant reaching, handling, and near acuity. DOT 709.687 010. However, a VE is an expert on the kinds of jobs that an individual can perform and can give more specific information than the DOT, and here, the VE concluded that the hypothetical individual that the ALJ posed—to which Bacon did not object and which accurately incorporated Bacon's restrictions—was capable of performing work as a cleaner and polisher. *See Phillips*, 357 F.3d at 1240; *see also* SSR 00-4p. And when the ALJ directly asked if her opinion would change based on Bacon's limitation to a lower stress work environment without

fast paced production quotas, the VE reaffirmed that Bacon still could perform work as a cleaner and polisher with those additional limitations.

Moreover, there does not appear to be any "apparent" conflict between Bacon's RFC limitations and the DOT's reaching, handling, and near acuity requirements, which, notably, do not appear in the job's main description paragraph. *See* DOT 709.687 010. The ALJ found that, as for Bacon's physical limitations, he could lift and carry certain amounts, stand and walk for certain periods of time, and should generally avoid climbing and hazardous industrial machinery. However, the ALJ evaluated Bacon's mental limitations separately and specifically determined that he was better suited for lower stress work without fast paced production quotas due to his mental difficulty with "adapting and managing [him]self." As such, unlike the contradiction between the terms "occasionally" and "frequently" at issue in *Washington*, constant reaching, handling, and near acuity with respect to cleaning and polishing items does not so clearly contradict the RFC limitations on stress and production quotas that were imposed due to Bacon's mood disorder, rather than his physical impairments. *See Washington*, 906 F.3d at 1366.

Thus, it is not "reasonably ascertainable" or "evident" from the DOT description of the cleaner and polisher job that a person who was limited to a lower stress work environment without past paced production quotas could not perform

9

that work. *See Washington*, 906 F.3d at 1356. Accordingly, the ALJ did not err in relying on the VE's opinion, and we affirm as to this issue.

II.

When the Appeals Council denies review, we only look to the evidence that was actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Statements by counsel in briefs are not evidence. *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013).

Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number. 20 C.F.R. § 404.1560(c); *see Phillips*, 357 F.3d at 1240. Although we previously have not addressed in a published opinion how many jobs constitute a significant number, we have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987).

Among other sources of job data, the Commissioner will take administrative notice of the DOT, as well as the Occupational Outlook Handbook, published by

10

the Bureau of Labor Statistics ("BLS").  20 C.F.R. § 404.1566(d)(1), (5).  In *Goode*, a VE presented flawed testimony by converting the DOT code for a bakery worker to the wrong Specific Occupational Classification ("SOC") group code to determine the number of available jobs, and neither the VE nor the Commissioner provided the actual number of available jobs, and the VE's numbers were substantially overstated because the SOC group code represented the aggregate number of jobs available for 65 separate DOT codes, rather than the specific DOT code that applied to the claimant.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1282-83 (11th Cir. 2020).  There, we reversed and held that when an ALJ relies on a VE's testimony regarding the number of jobs available in the national economy that the claimant could perform, "that testimony cannot be both internally inconsistent and incomplete."  *Id.* at 1285-86.  We also recognized that *Goode* was "*not* a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers."  *Id.* at 1284 n.3 (emphasis added).  Rather, the record showed that the claimant there had made several attempts during her hearing to question the VE about his flawed testimony and credibility, but the ALJ had cut the claimant's questioning short by urging her to "move on."  *Id.*

Here, substantial evidence supported the ALJ's finding that cleaner and polisher jobs existed in significant numbers in the national economy.  The ALJ could make this determination with evidence through a VE's testimony, and the

VE here estimated that there were 325,000 cleaner and polisher jobs in the national economy. *See Phillips*, 357 F.3d at 1240. And when the Appeals Council denies review, as here, this Court's review is limited to deciding whether the ALJ's decision was supported by substantial evidence and may not decide the facts anew. *See Winschel*, 631 F.3d at 1178. Thus, we must look only to the evidence that was presented to the ALJ, and not evidence that was subsequently presented to the district court or this Court. *See Falge*, 150 F.3d at 1323.

At Bacon's hearing, the only evidence presented to the ALJ regarding the availability of cleaner and polisher jobs was through the VE's testimony that there were 325,000 of them in the national economy. In the district court and on appeal, Bacon suggests that other evidence—i.e., evidence not presented to the ALJ or Appeals Council and not included in the administrative record—might show that the VE's testimony about the number of cleaner and polisher jobs far overestimated the actual number. But, Bacon did not present such evidence before the ALJ, nor did he object to the VE's testimony or inquire further into her methodology. In fact, he stipulated that the VE was qualified to testify. Thus, unlike *Goode*, this was a case in which the claimant failed to challenge or question the VE's methodology or job numbers. *See Goode*, 966 F.3d at 1284 n.3. Furthermore, because the VE's testimony is the only evidence regarding the number of jobs available in the record, this Court is foreclosed from considering

12

other evidence suggested by Bacon in the district court and on appeal. *See Falge*, 150 F.3d at 1323.

Thus, the VE's testimony that there were 325,000 cleaner and polisher jobs available in the national economy was neither clearly and unmistakably wrong on its face, nor was it internally inconsistent and incomplete. *See Goode*, 966 F.3d at 1285-86. Furthermore, considering that this Court has stated that as few as 80,000 jobs nationally constituted a significant number, the ALJ's step five finding was supported by substantial evidence. *See Allen*, 816 F.2d at 602. We therefore affirm on this issue.

**AFFIRMED.**